# �export Richmond.

## ERNEST W. TURNER V. COMMONWEALTH OF VIRGINIA.

January 19, 1928.

Absent, Burks, J.

1.  AGRICULTURE—*State Board of Crop Pest Commissioners—Abolition of Board—Regulations of Board Prior to Abolition—Case at Bar.*—In the instant case defendant planted a crop of late potatoes in the summer of 1926, contrary to the regulations of the State Board of Crop Pest Commissioners. At that time the State Board of Crop Pest Commissioners had been abolished and its law-enforcing powers and duties had been transferred to the Commissioner of Agriculture and Immigration. It was contended by defendant that when the Crop Pest Commission was abolished the rules and regulations adopted by it ceased to exist.

    *Held:* That chapter 122 of the Acts of 1926, abolishing the State Board of Crop Pest Commissioners, did not repeal or abolish any rules or regulations which had been adopted by that board. The purpose of the Acts of 1926 was not to destroy the work of the board but to transfer the authority given the board to the Commissioner of Agriculture and Immigration.

2.  AGRICULTURE—*State Board of Crop Pest Commissioners—Abolition—Indictment Charging Violation of Rule of Board—Case at Bar.*—In the instant case it was argued that the indictment charged that the defendant violated a rule of the State Board of Crop Pest Commissioners, whereas the rule in question was the rule of the Commissioner of Agriculture and not of the Crop Pest Commission, and therefore the indictment was bad on demurrer. The rule in question was adopted by the State Board of Crop Pest Commissioners, and while the authority to make and abolish such rules was changed prior to the violation of the rule by the defendant, the rule remained in full force until it was abolished by the new authority. As there was an existing valid rule the designation of the rule in the indictment as being under the authority of the State Board of Crop Pest Commissioners instead of upon the authority of the Commissioner of Agriculture and Immigration was mere description and could have been stricken out as surplusage.

3. AGRICULTURE—*Regulations of Crop Pest Commission with Regard to Potato Tuber Moth—Whether Section 880 of the Code of 1919, as Amended by Acts of 1926, Chapter 119, Repeals Section 2-B of Chapter 165 of the Acts of 1918 (Code of 1924, Section 871d).*—Acts of 1926, chapter 119, amended and re-enacted section 871 of the Code of 1919, by extending its provisions to the potato tuber moth. It was contended that by classifying the potato tuber moth under section 880 with San Jose scale the legislature intended to deprive the Board of Crop Pest Commissioners of authority to make any regulations with reference to the potato tuber moth and that it could be dealt with only as provided by section 880 of the Code of 1919.

   *Held:* That there was no merit in this contention, as section 880, as amended by Acts of 1926, chapter 119, was not intended to repeal section 2-B of chapter 165 of the Acts of 1918 which became a part of the Code of 1924, as section 871d.

4. AGRICULTURE—*Regulations of Crop Pest Commission—Section 880 of the Code of 1919, as Amended by Acts of 1926, Chapter 119, and Section 871d of the Code of 1924, Acts 1918, Chapter 165, Section 2-B.*—Section 880 of the Code of 1919, as amended by Acts of 1926, chapter 119, and section 871d of the Code of 1924, Acts 1918, chapter 165, section 2-B, are in full force, the former permitting institution of proceedings by the petition of ten freeholders, the latter giving to the State Board of Crop Pest Commissioners, now the Commissioner of Agriculture and Immigration, the authority to list crop pests and to make and enforce rules for their control and elimination.

Error to a judgment of the Circuit Court of Northampton county.

*Affirmed.*

The opinion states the case.

*J. Brooks Mapp,* for the plaintiff in error.

*John R. Saunders, Attorney-General,* and *Leon M. Bazile* and *Edwin H. Gibson, Assistant Attorneys-General,* for the Commonwealth.

CHICHESTER, J., delivered the opinion of the court.

Ernest W. Turner, plaintiff in error here, and defendant in the court below, was on November 15, 1926,

convicted of violation of one of the rules and regulations of the State Crop Pest Commission, and assessed to pay a fine of $50.00 by the jury trying the case. The court rendered judgment upon this verdict and a writ of error to this judgment was duly allowed by one of the judges of this court.

During the fall of 1923 the attention of the Director of the Virginia Truck Experimental Station near Norfolk, Va., was directed to the fact that what is known as the tuber moth was destroying the Irish potatoes in the county of Northampton.

During the years 1924 and 1925 this pest spread over the Eastern Shore of Virginia in such quantities as to jeopardize the potato crop, which is the principal crop of that section of the State. Embargoes were placed on Eastern Shore potatoes by North Carolina and South Carolina, and the State of Pennsylvania threatened to take similar action.

After consultation with the State Entomologist the Crop Pest Commission attempted to eradicate the moth by adopting certain rules or regulations set out in the indictment, which was later found by a grand jury of Northampton county against the defendant and which appears in the margin.* These rules pro-

---

\* "The Jurors of the Commonwealth of Virginia, in and for the body of Northampton county, and now attending said court, upon their oaths present that Ernest W. Turner, on the — day of August, A. D. 1926, in the county aforesaid, did unlawfully plant a fall crop of Irish potatoes, and did then and there in the county aforesaid unlawfully fail and refuse to comply with the regulations of the Board of Crop Pest Commissioners, issued in writing, after public notice thereof, which said regulations are in the following words, to wit:
'COMMONWEALTH OF VIRGINIA
STATE CROP PEST COMMISSION
BLACKSBURG, VIRGINIA
POTATO TUBER MOTH REGULATION.
" 'By virtue of authority conferred by act of Assembly known as the amended crop pest law, approved May 9, 1903, and sections 2-A and 2-B (Acts for 1918, chapter 165, page 302), approved March 13, 1918, the counties of Northampton and Accomac are hereby declared to be a regulated area

hibited the planting and growing of fall crops of potatoes or the planting of any potatoes after May 1st in each year and they were duly published by posting at the court house door of Northampton and Accomac counties and by advertising in each of the four newspapers published on the Eastern Shore. It further appears that the defendant was notified by C. R. Willey, Assistant State Entomologist, that the regulations were in force; that the object was to eradicate the potato tuber moth, and that if he violated the rules he could expect to be prosecuted. He subsequently planted the crop of potatoes, sometime after the 21st of July, 1926, and his indictment and conviction followed.

There are two assignments of error relied on by the defendant arising out of the action of the court in overruling the demurrer to the indictment, and in refusing instructions asked for by the petitioner and are as follows:

1. Because the regulations of the State Crop Pest Commission quoted in and made a part of the indictment in the proceedings were not in effect when the fall crop of potatoes in question was planted.

2. Because neither the State Crop Pest Commission, the Commissioner of Agriculture and Immigration, nor the Virginia Agricultural Experiment Station at Blacks-

---

for the purpose of insect and disease control, and the following regulations shall be declared effective in said area until further notice.

" 'Regulation No. 1—To aid in the control and eradication of the potato tuber moth the planting and growing of a fall crop of Irish potatoes is hereby prohibited and no Irish potatoes shall be planted in said area after May first of each year.

" 'Regulation No. 2—That during harvest all potatoes should be picked up as soon as possible and placed in barrels or other closed containers and the said barrels or containers be covered with barrel covers. That no potatoes shall be left exposed so that they may become infested by the tuber moth. That volunteer potatoes and other host plants be kept down until frost.

'J. B. WATKINS, Chairman.

" 'Adopted January 28, 1926.'

"against the peace and dignity of the Commonwealth of Virginia."

burg had power or authority to enforce any regulations as to potato tuber moth after June 23, 1926.

It is not necessary to consider both the grounds of demurrer and the exceptions to the action of the court in refusing the instructions asked for by the defendant as they raise the same legal questions. If the court was right in overruling the demurrer, which it did, it follows that it was also right in refusing to give the instructions asked for by the defendant.

It will be necessary, before taking up the assignments of error in order, to briefly review the acts of the General Assembly with reference to crop pests, beginning with the act approved May 9, 1903 (Acts Ex. Sess. 1902-03-04, c. 207). That act made the Board of Control of the Virginia Agricultural Experiment Station the State Board of Crop Pest Commission and defined its duties. It provided that the board should appoint a State Entomologist and such assistants as might be necessary; that it should prepare a list of dangerously injurious insects, pests and diseases of plants as may be controlled and eradicated; that it should provide rules and regulations for the State Entomologist "who shall proceed to investigate, control, eradicate and prevent such pests" (section 1), and that these rules should have the force and effect of law so far as they conform to the act and the general laws of this State and the United States. The act then provides a penalty of not less than $10.00 nor more than $25.00 for violation of such rules and regulations as are adopted.

Section 2 of the act provided that the Pest Commission should have power to provide quarantine rules and regulations concerning the sale and transportation of nursery stock into the State.

Section 3 provided for the annual inspection of nursery stock grown within the State.

Section 4 conferred power upon the board to make rules and regulations for the treatment of infested plants.

There are other sections providing penalties which are not germane here, but section 9 of the act provided that upon a petition signed by ten freeholders of any city, county or magisterial district it shall be the duty of the State Entomologist or his assistant to make a preliminary investigation of the locality from which the petition is received to ascertain if any trees or plants be infested with the insect known as San Jose scale and it provided the steps to be taken by the State Entomologist if the scale is present.

Section 10 provided for the payment of the expenses of the inspection by the board of supervisors of any county or the city council of any city.

The Crop Pest Commission was continued by section 870 of the Code of 1919 and the sections of chapter 207 of the act were carried into that Code.

By chapter 165 of the Acts of 1918, the 1903 act was amended by adding a section known as section 2B, Acts 1918, page 303 (now section 871d of the Code of 1924). This section appears in the margin.*

Section 871 of the Code of 1919 was amended and

---

* "Whenever the Crop Pest Commission shall find that there exists in this State, or any part thereof, any insect pest or disease, and that its dissemination should be controlled or prevented, the Crop Pest Commission shall give public notice thereof, specifying the plant and plant products infested or infected therewith, and movement, planting or other use of any such plant or plant product, or other thing or substance specified in such notice as likely to carry and disseminate such insect pests or disease, shall be prohibited within such area as shall be designated in said public notice, except under such conditions as shall be prescribed by the Crop Pest Commission as to inspection, treatment, and disposition, and said prohibition shall continue in force until the Crop Pest Commission shall give public notice withdrawing the same."

re-enacted by chapter 119 of the act of 1926. This amendment appears in the margin.*

By chapter 122 of the Acts of 1926, approved March 9, 1926, the State Board of Crop Pest Commissioners was abolished and by section 2 of this act it is provided: "That the law-enforcing powers and duties imposed by law upon the State Board of Crop Pest Commissioners are hereby transferred to and shall hereafter be exercised or performed by the Commissioner of Agriculture and Immigration under the direction of the Board of Agriculture and Immigration. That the investigational functions and duties be and hereby are transferred to the Virginia Agricultural Experiment Station at Blacksburg."

It will thus be seen that at the time the defendant planted his crop of late potatoes in the summer of 1926 the State Board of Crop Pest Commissioners had been abolished, and the law-enforcing powers and duties had been transferred to the Commissioner of Agriculture and Immigration.

[1] Out of this situation the first ground of demurrer and the first assignment of error arises. That is to

---

* "The Board of Crop Pest Commissioners shall, from time to time, after due consideration, prepare a list of such dangerously injurious insect pests and diseases of plants as may properly within its judgment and the judgment of the State Entomologist be controlled or eradicated, and they shall cause such list to be published, along with particular specifications as to the nature and appearance of and manner in which the said pests are generally disseminated. The Board of Crop Pest Commissioners, shall, at the time, provide rules and regulations under which the State Entomologist shall proceed to investigate, control, eradicate and prevent the dissemination of the said pests as far as may be possible, and these rules and regulations shall have the full force and effect of the law so far as they conform to this chapter and the general laws of this State and of the United States; and any person, firm or corporation who fails or refuses to comply with the orders or directions issued in writing under regulations provided by the Board of Crop Pest Commissioners shall, upon conviction thereof, be fined not less than ten nor more than one hundred dollars for each such failure or refusal. All prosecutions under this chapter shall be by indictment, presentment or information in the circuit court of the county or corporation court of the city in which the person, firm or corporation proceeded against is then resident."

say, it is contended that when the Crop Pest Commission was abolished the rules and regulations adopted by it ceased to exist. With reference to this assignment it is only necessary to say that we do not think that chapter 122 of the Acts of 1926 abolishing the State Board of Crop Pest Commissioners attempted to repeal or abolish any rules or regulations which had been adopted by the Board. The rule prohibiting the planting of potatoes in Northampton and Accomac counties was adopted January 28, 1926, and it is clear that the purpose of the act was not to destroy the work of this Board, but that it was to transfer the authority given the Board to the Commissioner of Agriculture and Immigration. When this transfer of authority was made the Commissioner of Agriculture, under the direction of the Board of Agriculture and Immigration, stepped into the shoes of the Crop Pest Commission so far as the duties of the latter were concerned. The Commissioner has full authority to abolish any rules and regulations adopted by the previous Commission but it took affirmative action on his part to accomplish this purpose. The Commissioner of Agriculture under the direction of the Board of Agriculture did, as a matter of fact, adopt rules and regulations of the State Board of Crop Pest Commission with reference to the tuber moth for Northampton and Accomac counties but this action on the part of the Commissioner was not necessary.

[2] But it is said the indictment charges that the defendant violated a rule of the State Board of Crop Pest Commissioners and that the rule, if the Crop Pest Commissioners, or the Commissioner of Agriculture, had authority to make such a rule, was a rule of the Commissioner and not of the Commission, and therefore the indictment was bad upon demurrer. We can-

not agree with this contention. If we are right in what has just been said, the rule was adopted by the State Board of Crop Pest Commissioners, and while the authority to make and abolish such rules was changed prior to the violation of the rule by the defendant, the rule remained in full force until it was abolished by the new authority. Indeed, if there was in existence at the time of the alleged violation a valid rule prohibiting the planting of potatoes in the counties of Northampton and Accomac, such as was set out in the indictment, the designation of the rule as being upon the authority of the State Board of Crop Pest Commissioners instead of upon the Commissioner of Agriculture and Immigration, would be a mere description and could have been stricken out as surplusage.

[3, 4] The second assignment of error is based upon the fact that the act of the General Assembly approved March 8, 1926 (chapter 119), after giving the State Board of Crop Pest Commissioners authority, by section 871 of the act, to prepare a list of dangerously injurious insect pests and diseases of plants and to provide rules and regulations to control and eradicate them, amended section 880 as will appear from those parts which appear in italics, as follows: "Upon a petition signed by ten freeholders of any city, county or magisterial district, it shall be the duty of the State Entomologist, in person or by an assistant, to make a preliminary investigation of the locality from which the petition is received, to ascertain if any trees, plants *or parts of plants*, be infected with the insect known as the San Jose scale *or with the potato tuber moth.* If upon such preliminary investigation it shall appear that the San Jose scale or the *potato tuber moth* is present in the territory examined, the State Entomologist shall appoint a local inspector, and order a full

inspection of such city, county or magisterial district to discover and locate all infested premises; and the local inspector shall report the results of such further inspection to the owners of all infested premises, and to the board of supervisors of the said county or the city council of said city, giving the location of all said infested trees, plants *or parts of plants,* and the extent of infestation in each case, and make specific recommendations in accordance with the instructions furnished him by the State Entomologist, which instructions may be printed or written."

It is contended that by classifying potato tuber moth under section 880 with San Jose scale the legislature intended to deprive the Board of Crop Pest Commissioners of authority to make any rules and regulations with reference to the potato tuber moth and that it could be dealt with only as provided by section 880.

There is no merit in this assignment. Section 880 as amended was intended to give ten freeholders in any city, county or magisterial district the right to inaugurate a preliminary investigation of any locality within the State where it is suspected that trees or plants are infested with San Jose scale or with potato tuber moth, with the further provision that a local inspector shall make investigation and report to the board of supervisors or to the city council of the city, but this section is not intended to repeal section 2B of chapter 165 of the Acts of 1918 which became a part of the Code of 1924 as section 871D. The two sections are in full force, the former permitting institution of proceedings by the petition of ten freeholders, the latter giving to the State Board of Crop Pest Commissioners, now the Commission of Agriculture and Immigration, the authority to list crop pests and to make and enforce rules for their control and elimination.

We think, therefore, that the indictment charged the violation of a valid rule of the State Board of Crop Pest Commissioners; that the demurrer was properly overruled, and that the judgment of the trial court should be affirmed.

*Affirmed.*